UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BONITA MEEG,

                Plaintiff,

-against-

THE HEIGHTS CASINO and CHRISTIAN PETRINA,

                Defendants.

**MEMORANDUM & ORDER
17-CV-4059 (NGG) (CLP)**

NICHOLAS G. GARAUFIS, United States District Judge.

Bonita Meeg brings this employment discrimination lawsuit against her former employer, the Heights Casino, and the Heights Casino's general manager, Christian Petrina. (Compl. (Dkt. 1).) Meeg alleges that Defendants unlawfully discriminated against her because of her age, gender, and disability, in violation of the New York City Human Rights Law and the Age Discrimination in Employment Act.

Defendants move to compel arbitration of Plaintiff's claims. For the reasons explained below, Defendants' motion is DENIED.

## I. BACKGROUND

Unless otherwise noted, the following facts are undisputed.[1] Where the facts are disputed, the court notes the dispute and credits Plaintiff's version of the facts. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) ("Courts deciding motions

---

[1] Defendants accept the factual allegations in the complaint for the purposes of this motion. (*See* Mem. in Supp. of Mot. to Compel ("Mem.") (Dkt. 48) at 2 n.1.)

to compel . . . draw[] all reasonable inferences in favor of the non-moving party.").[2]

Plaintiff began working for the Heights Casino in 1998. (Compl. ¶ 19.) She was terminated on or around June 30, 2016. (*Id.* ¶ 128.) Plaintiff alleges that in both 2014 and 2015, she was terminated for the summer and subsequently rehired in the fall. (*Id.* ¶¶ 73, 80.) Documents produced by Defendants in discovery indicate that, at the very least, Plaintiff retained her health coverage during the periods she claims to have been terminated. (*See* Health Care Documentation (Dkt. 49-1) at ECF 90-103.)

In September 2013, Defendants presented Plaintiff with an Employee Handbook. (2013 Casino Heights Employee Handbook ("2013 Handbook") (Dkt. 49-1) at ECF 34.) Plaintiff signed a form acknowledging receipt of the 2013 Handbook on September 20, 2013. (Receipt of 2013 Employee Handbook ("2013 Handbook Receipt") (Dkt. 49-1) at ECF 32.) The front page of the 2013 Handbook, which does not include a table of contents, states that the purpose of the handbook is "informational only" and that it "is not intended to create any contractual rights or obligations regarding employment with the Heights Casino." (2013 Handbook at ECF 34.) The 2013 Handbook Receipt includes a certification that Plaintiff understood that "that nothing in the Employment Handbook is to be interpreted . . . as conferring any contractual rights upon me." (2013 Handbook Receipt at ECF 32.) Notwithstanding these disclaimers of contractual rights, the 2013 Handbook contained an arbitration provision nested under the "Termination of Employment" heading. (2013 Handbook at ECF 49.) The provision reads, in full:

---

[2] When quoting cases, unless otherwise noted, all citations and quotation marks are omitted and all alterations are adopted.

2

> If a dispute between an employee and The Casino cannot be settled by negotiation, the parties agree to proceed to binding arbitration administered under the Employment Arbitration Rules of the American Arbitration Association. Judgment on the award may be entered in any court having jurisdiction.

(*Id.*)

In June 2015, Defendants issued Plaintiff a revised Employee Handbook. (2015 Casino Heights Employee Handbook ("2015 Handbook") (Dkt. 49-1) at ECF 53.) Plaintiff signed a form acknowledging receipt of the 2015 Handbook on July 1, 2015. (Receipt of 2015 Employee Handbook ("2015 Handbook Receipt") (Dkt. 49-1) at ECF 88.) The 2015 Handbook includes a table of contents (2015 Handbook at ECF 54-55) and a distinct section titled "Compulsory Arbitration" (*id.* at ECF 84). It also contains a disclaimer of contractual rights similar to the 2013 Handbook. The 2015 Handbook states: "This Handbook is informational only . . . . The polices and provisions contained in this Handbook do not create express or implied contractual rights or obligations with respect to any matters contained herein." (*Id.* at ECF 56.) The arbitration provision in the 2015 Handbook is more extensive than that in the 2013 Handbook, but neither the arbitration provision nor the remainder of the handbook states that an employee's acceptance of arbitration is a condition of continued employment. (*Id.* at ECF 84.)

Plaintiff modified the 2015 Handbook Receipt before signing it. (2015 Handbook Receipt at ECF 84.) Specifically, Plaintiff struck through the reference to compulsory arbitration, so that the certification on her 2015 Handbook Receipt read: "I acknowledge that, except for the policy of at will employment and ~~compulsory arbitration~~ over disputes, the terms and conditions of my employment . . . may be modified . . . at any time." (2015 Handbook Receipt at ECF 88.) Below the certification, Plaintiff

3

wrote "Being that I have an EEOC Complaint filed in 2014, I am not able . . . to sign the compulsory arbitration." (*Id.*)

Plaintiff filed her complaint on July 7, 2017. (Compl.) After limited discovery, Defendants filed the fully briefed motion to compel on April 19, 2019. (*See* Mot. to Compel Arbitration (Dkt. 47); Mem.; Pl. Mem. in Opp. to Mot. to Compel ("Opp.) (Dkt. 50); Reply in Supp. of Mot. to Compel ("Reply") (Dkt. 52).)

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "This policy is founded upon a desire to preserve parties' ability to agree to arbitrate, rather than litigate, their disputes." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019). Under Section 4 of the FAA, a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may file a motion to compel, which a court must grant "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 354-55 (2011). Despite the FAA's "liberal federal policy favoring arbitration agreements," *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012), "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 127 (2d Cir. 2011) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).

A motion to compel arbitration requires the court to address two issues: (1) whether the parties have entered into a valid agreement to arbitrate; and (2) if so, whether the dispute at issue falls within the scope of the parties' agreement to arbitrate. *See In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d at 128; *see also Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 299 (2010) ("[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue."). The first question—whether the parties have agreed to arbitrate in the first place—"is one only a court can answer, since in the absence of any arbitration agreement at all, questions of arbitrability could hardly have been clearly and unmistakably given over to an arbitrator." *VRG Linhas Aereas S.A. v. Matlin Patterson Global Opportunities Partners II L.P.,* 717 F.3d 322, 325 n.2 (2d Cir. 2013) (quotation marks omitted). In evaluating the second question—whether the scope of the agreement to arbitrate covers the dispute at issue—"courts presume that the parties intend courts, not arbitrators, to decide . . . disputes about arbitrability." *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014). The question of whether an agreement to arbitrate exists between the parties is governed by state contract law. *Meyer*, 868 F.3d at 73-74.

In deciding a motion to compel arbitration, "the court applies a standard similar to that applicable to a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *see also Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.,* 661 F.3d 164, 172 (2d Cir. 2011) ("If there is a genuinely disputed factual issue whose resolution is essential to the determination of the applicability of an arbitration provision, a trial as to that issue will be necessary; but where the undisputed facts in the record require the matter of arbitrability

to be decided against one side or the other as a matter of law, we may rule on the basis of that legal issue and 'avoid the need for further court proceedings.'" (quoting *Bensadoun*, 316 F.3d at 175)). As a result, allegations related to arbitrability are evaluated to determine "whether they raise a genuine issue of material fact that must be resolved by a fact-finder at trial." *Schnabel*, 697 F.3d at 113. In addition, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000); *see also Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 342 (S.D.N.Y. 2014) ("Whether it argues that arbitration is improper because the arbitration agreement is invalid under a defense to contract formation, or asserts that the arbitration contract does not encompass the claims at issue, either way, the resisting party shoulders the burden of proving its defense."). In evaluating a motion to compel arbitration, the court may consider "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." *Meyer*, 868 F.3d at 74.

### III. DISCUSSION

Under New York law, a court may only compel arbitration when "the evidence establishes . . . [a] clear, explicit and unequivocal agreement to arbitrate." *Fiveco, Inc. v. Haber*, 11 N.Y.3d 140, 144 (2008). "Arbitration agreements are considered contracts," *Nat'l Credit Union Admin. Bd. v. Goldman, Sachs & Co.*, 775 F.3d 145, 148 (2d Cir. 2014), and under New York law, "[t]o create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus. & Terminal Corp. v. New York State Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999). "In determining whether the parties entered into a contractual agreement . . . it is necessary to look

. . . to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds." *Brown Bros. Elec. Contractors v. Beam Const. Corp.*, 41 N.Y.2d 397, 399 (1977).

Defendants assert that the Parties entered into a binding arbitration agreement in both the 2013 Handbook and the 2015 Handbook. Each is considered in turn.

### A. The 2013 Handbook

The "objective manifestations" of Defendants' intent with regard to the 2013 Handbook are explicit. Defendants meant for the 2013 Handbook to be "informational only;" it was "not intended to create *any* contractual rights or obligations regarding employment with the Heights Casino." (2013 Handbook at ECF 34 (emphasis supplied).) As another court in this circuit has explained, "[h]aving inserted these disclaimers in an apparent effort to avoid vesting [Plaintiff] with contractual *rights,* [Defendants] cannot conveniently choose to ignore them and argue that the Handbook imposed contractual *obligations* on [Plaintiff]." *U.S. ex rel. Harris v. EPS, Inc.*, No. 05-CV-212, 2006 WL 1348173, at *5 (D. Vt. May 16, 2006) (applying Vermont law).

Defendants' initial brief entirely ignores the disclaimer of rights and obligations in the 2013 Handbook and focuses instead on the general enforceability of arbitration agreements within employee handbooks. (*See* Mem. at 7-11; Reply at 2-3); *see also, e.g.*, *Arakawa v. Japan Network Grp.*, 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999). This misses the forest for the trees. Defendants do address the issue in their reply, but rely on two factually distinct cases—*Brown v. St. Paul Travelers Co.,* 559 F. Supp. 2d 288, 292 (W.D.N.Y.2008), *aff'd,* 331 F. App'x 68 (2d Cir. 2009) and *Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 571 (S.D.N.Y. 2013)—while omitting the case that presents the closest factual analogue.

7

In each *Brown* and *Issacs*, the court considered a situation where the employee was "advised of the policy and that compliance with it [was] a condition of employment." *Isaacs*, 968 F. Supp. 2d at 571 (citing *Brown*, 559 F. Supp. 2d at 292). In *Brown*, for example, the employee was informed via email that her "agreement to abide by [the arbitration agreement] was 'an express condition' of continuing employment." *Brown*, 559 F. Supp. 2d at 290.[3] Here, nothing in the arbitration provision, the remainder of 2013 Handbook, or the record indicates that acceptance of the arbitration provision was a condition of employment. (*See generally* 2013 Handbook at ECF 34.) Instead, the 2013 Handbook was explicitly "informational."

More similar to this case is *Ex rel. Harris*, which held that an arbitration provision contained within a handbook that included a disclaimer that the "[h]andbook does not constitute an employment contract and is not intended to create contractual obligations of any kind" was unenforceable because the disclaimer precluded a finding that the parties intended to enter into an arbitration agreement.[4] 2006 WL 1348173, at *1;

---

[3] Also, the 2013 Handbook does not have a table of contents and the arbitration provision is nested under the "Termination of Employment" heading. (*See* 2013 Handbook at ECF 34, 49.) While this may not rise to the level of the provision being "a hidden clause intended to bind employees to arbitration without adequate notice," *Isaacs*, 968 F. Supp. 2d at 571, it is factually distinct from *Isaacs*, where the arbitration policy was "found under a separate and bolded 'Dispute Resolution Policy' heading." *Isaacs*, 968 F. Supp. 2d at 571.

[4] Although *Harris* applied Vermont law, it here relies on a basic principle of contract law that is followed in New York: Compelling arbitration requires a "clear, explicit and unequivocal agreement to arbitrate." *Fiveco*, 11 N.Y.3d at 144. This is evidenced by the fact that *Brown* applied New York law and distinguished *Harris* not based on choice of law, but because the employee handbook in that case did "not contain the same disclaiming language as was present in *Harris* and which led that court to conclude that the arbitration agreement had no legal effect." *Brown*, 559 F. Supp. 2d at 292.

*see also Sherry v. Sisters of Charity Med. Ctr.*, No. 98-CV-6151 (JG), 1999 WL 287738, at *5 (E.D.N.Y. May 4, 1999) ("[C]onsidering that the handbook's introduction states, 'This booklet is not a contract,' an employee would have no reason to view . . . the handbook's grievance procedure any differently than the other non-contractual provisions in the handbook.").

That the 2013 Handbook was not intended by the parties to create a binding agreement to arbitrate disputes is further supported by the 2013 Handbook Receipt signed by Plaintiff. By signing the receipt, the Plaintiff "certif[ied]" that she "under[stood] . . . that nothing in the Employment Handbook is to be interpreted . . . as conferring any contractual rights upon me." (2013 Handbook Receipt at ECF 32.) While Defendants rely on the 2013 Handbook Receipt as evidence that the Parties mutually agreed to enter into a binding contract to arbitrate their disputes (*see* Mem. at 8-9), the wording of the receipt invalidates their argument.[5] A binding arbitration agreement confers contractual rights on, and creates contractual obligations for, all parties involved. *See, e.g., Meyer v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 00-CV-8339 (JSR), 2001 WL 396447, at *1 (S.D.N.Y. Apr. 18, 2001) ("[In] a contract to arbitrate disputes respecting employment, . . . the mutually binding nature of the arbitration clause constitutes valid consideration."). Here, Defendants' "expressed words and deeds," *Brown Bros. Elec.*, 41 N.Y.2d at 399, reveal that Defendants intended the 2013 Handbook to confer no contractual rights upon Plaintiff and to ensure that Plaintiff certified her understanding of the same. Because the contractual right to arbitrate disputes inheres in both Parties (*see* 2013 Handbook

---

[5] The wording of the 2013 Handbook Receipt also distinguishes this case from cases such as *Arakawa*. There, the court enforced an arbitration provision in part because the acknowledgement form signed by the employee "reiterated the language [of the arbitration policy] and stated that [the employee] understood and agreed to this arbitration policy." *Arakawa*, 56 F. Supp. 2d at 351.

at ECF 49 ("If a dispute between an employee and The Casino cannot be settled by negotiation, the parties agree to proceed to binding arbitration . . . .")), the plain language of the 2013 Handbook Receipt precludes the formation of a valid arbitration agreement.

Finally, even if the handbook were ambiguous as to whether the disclaimers against contractual rights and obligations apply to the arbitration provision, Defendants would still come up short. Because New York contract law requires that "ambiguous language should be construed against the interest of the drafting party," *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003), any ambiguity must be resolved to find that the disclaimers apply to the arbitration provision.

For the foregoing reasons, the 2013 Handbook is not a binding agreement to arbitrate between the parties.

### B. The 2015 Handbook

The Parties also did not enter into a binding agreement to arbitrate in the 2015 Handbook. As an initial matter, the 2015 Handbook suffers from many of the same issues that plague the 2013 Handbook. The 2015 Handbook also expressly states that the "policies and provisions contained in this Handbook do not create express or implied contractual rights or obligations with respect to any matters contained herein." (2015 Handbook at ECF 56.) As the purported arbitration agreement is "contained [t]herein," Defendants again "objective[ly] manifest[ed]" their intent to not oblige Plaintiff to arbitrate disputes. *See Brown Bros. Elec.*, 41 N.Y.2d at 399.

Here, however, Plaintiff also expressed her own intent to not be bound by the arbitration provision through her alterations to the 2015 Handbook Receipt. Defendants acknowledge that "Plaintiff wrote on the July 2015 Handbook Receipt that she could not sign the compulsory arbitration policy in light of her

pending EEOC charge" (Mem. at 11; *see also* 2015 Handbook Receipt at ECF 88), but argue that she indicated her acceptance of the arbitration provision by continuing to work for Defendants.

Defendants are half right. They are correct to point out that conduct can create a contract between parties, but they misstep when they assert that Plaintiff's continued employment indicated her assent to the handbook's arbitration provision. In fact, Plaintiff's continued employment is evidence that Defendants accepted her modifications to the 2015 Handbook Receipt. In *Brown v. St. Paul Travelers Companies, Inc.*, the Second Circuit explained:

> Under New York law, the conduct of the parties may lead to the inference of a binding agreement: A contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct. It is just as binding as an express contract arising from declared intention, since in the law there is no distinction between agreements made by words and those made by conduct.

331 F. App'x 68, 70 (2d Cir. 2009) (summary order). However, "[i]t is a fundamental principle of contract law that a valid acceptance must comply with the terms of the offer and, if qualified with conditions[,] it is equivalent to a rejection and counteroffer." *Woodward v. Tan Holding Corp.*, 820 N.Y.S.2d 126, 128 (2d Dep't 2006); *see also Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 83 (2d Cir. 1998) ("A proposal to accept [an] offer if modified or an acceptance subject to other terms and conditions is equivalent to an absolute rejection of the offer."); *Thor Properties, LLC v. Willspring Holdings LLC*, 988 N.Y.S.2d 47, 49 (1st Dep't 2014) ("If . . . the offeree responds

by conditioning acceptance on new or modified terms, that response constitutes both a rejection and a counteroffer which extinguishes the initial offer.").

Here, Plaintiff did not accept the terms of the compulsory arbitration provision in the 2015 Handbook. The 2015 Handbook Receipt, as modified by Plaintiff, reads: "I acknowledge that, except for the policy of at will employment and ~~compulsory arbitration~~ over disputes, the terms and conditions of my employment . . . may be modified . . . at any time." (2015 Handbook Receipt at ECF 88.) Below the certification, Plaintiff wrote "[b]eing that I have an EEOC Complaint filed in 2014, I am not able . . . to sign the compulsory arbitration." (*Id.*) Plaintiff's conditions on her certification in the 2015 Handbook Receipt amounted to a rejection of Defendants' offer to agree to arbitrate disputes and a counteroffer to work for Defendants without entering into an arbitration agreement. Defendants had the option of rejecting Plaintiff's counteroffer. They could have terminated her employment upon receipt of the modified certification or they could have directed Plaintiff to sign an unmodified certification upon pain of termination. They did neither. Therefore, Defendants' acceptance of Plaintiff's counteroffer is "derived from the presumed intention of the [Defendants] as indicated by their conduct" in continuing to employ Plaintiff. *See Brown*, 331 F. App'x at 70.

Because neither the 2013 Handbook nor the 2015 Handbook creates a binding agreement to arbitrate between the Parties, Defendants motion to compel arbitration is DENIED.

### IV. CONCLUSION

For the foregoing reasons, Defendants' (Dkt. 47) motion to compel arbitration is DENIED. The parties are DIRECTED to contact

the chambers of Chief Magistrate Judge Cheryl L. Pollak regarding next steps in the case.

SO ORDERED.

Dated: Brooklyn, New York
March 27, 2020

      /s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge